LUNKENHEIMER CO., APPELLEE, *v.* BD. OF REVISION OF HAMILTON COUNTY ET AL., APPELLANTS.

(No. C-73453—Decided April 15, 1974.)

*Mr. Harry M. Hoffheimer,* for appellee.
*Mr. Simon L. Leis, Jr.,* and *Mr. Robert W. Worth,* for appellants.

PALMER, J. This matter arose from a complaint as to the assessment of real property filed by the plaintiff taxpayer, an Ohio corporation located in Hamilton County and the appellee herein, on March 5, 1970, with defendant Board of Revision of Hamilton County (hereafter called "Board"), an appellant. The taxpayer sought a reduction in the tax valuation of land and buildings in Hamilton County. After a hearing and the presentation of evidence and arguments, the Board rendered its decision denying any reduction. Thereafter, the taxpayer timely filed its appeal to the Court of Common Pleas from the Board's order. Following the presentation of evidence and arguments, the court found the true value of the taxpayer's property for the years in question to be $1,498,000 and found that, based upon a stipulation of the parties "with respect to determinations made by the State Board of Tax Appeals of the

common level of assessments of real property in each of the 88 counties of the state for the years 1969, 1970, 1971 and 1972, the applicable level of assessments for the years in question were as follows:"

    1969 — 32.4%
    1970 — 31.5%
    1971 — 30.4%
    1972 — 33.2%

This appeal is directed solely to what is conceded by both parties to be the use by the Court of Common Pleas of the *statewide* common average percentage level of assessment for the years 1969, 1970 and 1971, as opposed to the use by the Board of the higher Hamilton County assessment percentages, but does not call into question either the determination of the true value of the property, or the determination of the percentage fixed for the year 1972. As phrased by the Board in its assignment of error, the sole question before us is whether the trial court erred "in finding that the Board of Revision should have applied a 'statewide' common level of assessment to the true market value of plaintiff-appellee's property for the tax years 1969, 1970 and 1971, rather than the common level of assessment of Hamilton County as determined by the Board of Tax Appeals for said years." The question thus presented is limited, but, bringing into play as it does questions of statutory interpretation and constitutional mandate, all intermixed with a substantial judicial gloss and superimposed over a significant economic interest on the part of both government and the individual taxpayer, has been as vexatious as it is limited.

The problem, simply put, arises from the custom of counties in this state of appraising property at differing percentages of its true value for purposes of applying applicable tax rates. *State, ex rel. The Park Invest. Co.,* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 413. Thus, two adjoining counties having an identical tax rate will exact from the owners of properties having an identical true market value differing taxes if County A appraises at, say, 35% of true value and County B at 30% of true

value. Under these circumstances, the taxpayer from County A may be expected to react cholerically when he compares his tax bill with his neighbor's in County B, and to express, forcibly, the instinctive indignation felt at unequal treatment, a universal instinct against injustice formalized by such enactments as, for example, the U. S. Constitution's Fourteenth Amendment prohibition against the denial to any person of the equal protection of the laws, and, more directly to the point, Section 2 of Article XII of the Constitution of Ohio, expressing the following philosophy with respect to taxation: ''Land and improvements thereon shall be taxed by uniform rule according to value.''

The question, however, is whether such constitutional (and other) mandates are satisfied by uniformity and equality *within the county,* so that the taxpayers in County A may not complain of the lesser tax paid by the taxpayer in County B, so long as his neighbors in County A are appraised uniformly and equally with himself. The Board argues the affirmative answer to this question, and the taxpayer, obviously, the negative; both find support in the same, or approximately the same, authorities.

The appeal from the decision of the Board was prosecuted under R. C. 5717.05, which establishes the parameters of judgment on review by the Court of Common Pleas, in the following words pertinent to this appeal:

''* * * It shall determine the taxable value of the property whose valuation or assessment for taxation by the county board of revision is complained of, or in the event the complaint and appeal is against a discriminatory valuation, shall determine a valuation which shall correct such discrimination * * *. In correcting a discriminatory valuation, the court shall increase or decrease the value of the property whose valuation or assessment by the county board of revision is complained of by a per cent or amount *which will cause such property to be listed and valued for taxation by an equal and uniform rule.*'' (Emphasis added.)

The trial court here, after reviewing the applicable authorities, felt itself constrained to apply a statewide

common level of assessment to the true market value for the three years preceding the year 1972—the later year being accorded singular treatment since it is governed by the provisions of amended R. C. 5715.01, effective June 28, 1972—and, accordingly, corrected what it held to be the discriminatory valuation resulting from the Board's initial application of the Hamilton County common level of assessment. After a careful review of the authorities cited to us by the parties, we are unable to find that the trial court erred in rendering such a judgment.

Thus, in the first of a series of four *Park Investment* cases, which together fairly sum up the philosophy and rulings of the highest court of this state on the general is sue involved in this appeal, *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals,* 175 Ohio St. 410, 411, the Supreme Court noted:

"Relator bases its right to relief on statistical records of real estate transactions *in every county of the state,* compiled by The Board of Tax Appeals, which admittedly show that 'commercial' real estate in Cuyahoga County has a higher assessed valuation in relation to sales price than real estate in other classifications, and real estate generally * * *." (Emphasis added.)

Addressing itself to this aspect of the problem, the court stated, at 413:

"This brings us to a consideration of a question which is ancillary to the question of value. It is and has been the practice in this state for taxation purposes to establish an assessed value of less than actual value, in other words, to assess property for taxation only for a percentage of the actual value. *This raises the question of uniformity. Taxation by uniform rule within the requirement of the constitutional provision requires uniformity in the mode of assessment.* Thus, inasmuch as property is not assessed on the basis of full value, the percentage of such value which is the basis of taxation *or, in other words, the tax basis must be relatively uniform not only throughout the state* but also as to the various classes of real property. * * *

"Thus, if the ratio between sales price and assessed

value in general differs to any appreciable extent, *either throughout the state as a whole* or as to various classes of property in particular, then property is not being taxed by uniform rule as required by Section 2, Article XII of the Ohio Constitution." (Emphasis added.)

Although not specifically addressed to intercounty discrepancies, the above quoted language and rationale were expressly reaffirmed by and applied in *Koblenz* v. *Bd. of Revision* (1966), 5 Ohio St. 2d 214; *Goldberg* v. *Bd. of Revision* (1966), 7 Ohio St. 2d 139, and *Frederick Bldg. Co.* v. *Bd. of Revision* (1968), 13 Ohio St. 2d 59.

In the second *Park Investment* decision, *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1968), 16 Ohio St. 2d 85, the relator asserted that the respondent Board had collected and available to it both statewide sales ratio average figures showing an assessment percentage of 38% and Cuyahoga County figures showing substantially higher (and varying) figures for local commerical, residential and vacant property than the statewide average, and asserted an illegal and unconstitutional discrimination thus resulting. The Supreme Court, at page 86, stated the question to be decided as follows: "* * * Do Sections 5715.01 and 5715.24, Revised Code, and Section 2 of Article XII of the Ohio Constitution and Section 1 of the Fourteenth Amendment to the United States Constitution, require statewide uniformity in the assessment of real property for taxation?" Examining the then wording of R. C. 5715.01, the court concluded at page 87:

"Thus, it is the mandatory duty of the Board of Tax Appeals to see that all real property within the state of Ohio is assessed at a uniform percentage of its true value in money, which assessed value shall not exceed fifty per cent of its true value in money."

Examining R. C. 5715.24, the court stated at page 88, that this section imposes an obligation to "* * * establish an equal and uniform statewide rule for the determination of the taxable  value and assessment of real property in this state" and that both sections require the Board "* * * annually to determine an equal and uniform rule for assess-

ing real property in the state of Ohio, which rule shall provide a percentage of the true value in money of each parcel or tract, which shall be the taxable value of each such parcel or tract.''

This decision is also noteworthy because it was decided on the same day, December 24, 1968, as *Phelps Realty Co.* v. *Bd. of Revision* (1968), 16 Ohio St. 2d 83 (infra), relied upon here by the Board.

The third *Park Investment Co.* decision, *State, ex rel. Park Invest. Co., v. Bd. of Tax Appeals* (1971), 26 Ohio St. 2d 161, is perhaps the clearest expression of the court's command to establish statewide uniformity. In that case, the relator sought an adjudication of contempt because the Board, after commencing hearings designed to produce rules complying with the Supreme Court's second *Park Investment* decision to ''see that all real property within the state of Ohio is assessed at a uniform percentage of its true value in money,'' terminated such hearings after the passage of legislation which, among other things, suspended its rule-making powers until 1972. Holding such legislation, to the extent that it purported to delay the Board in carrying out its constitutional mandate as set out in the second *Park Investment Co.* decision, to be invalid, the Supreme Court held that the Board was still bound to conform to such mandate. That part of the legislation in question (R. C. 5715.01, effective May 14, 1969) which purported to allow the several counties to continue the methods by which each determined separately the taxable value of real property in 1968, *was expressly struck down as contrary to Section 2 of Article XII of the Ohio Constitution*. The court stated, at page 165 and 166 that:

'' * * * unless such method is uniform according to value for land and improvements thereon * * * [t]he county auditor, the Board of Revision, the Board of Tax Appeals, the General Assembly and this court are required to follow the provisions of Section 2 of Article XII of the Ohio Constitution and Section 1 of the Fourteenth Amendment to the Constitution of the United States—now, as well as after 1972.''

Indicating its awareness that uniformity of assessment is more easily commanded than accomplished, the Supreme Court, at page 167, pointed out that, notwithstanding the difficulty, the Board had already begun public hearings toward this end and that an official of the Board of Tax Appeals had testified at the hearings that, while it had not adopted a rule before being halted by the legislation in question "* * * it had been trying to 'get everyone equalized at 40 per cent' " much in the way that a rule adopted by the Board a few years later tried to get "everyone" equalized at 35 per cent by 1972. See the fourth *Park Investment* decision, *infra*. Clearly, the Board of Tax Appeals was struggling with the practical complexities involved in complying with what it recognized as the requirement of the Constitution and the orders of the Supreme Court for *statewide* uniformity of assessment.

Formalizing the rule of the third *Park Investment* case in the second and third paragraphs of the syllabus, the Supreme Court held:

"2. The Board of Tax Appeals has the mandatory duty, in the exercise of its supervisory power and duty, pursuant to R. C. 5715.01, to *take such steps as are necessary to effect an orderly correction of any inequalities in the percentage of true value at which all real property and all classes thereof are assessed for taxation.* (R. C. 5715.011, effective May 14, 1969.)

"3. Action taken pursuant to the mandatory provisions of R. C. 5715.01 and 5715.011 must carry out the constitutional command, set forth in Section 2 of Article XII of the Ohio Constitution, that 'land and improvements thereon shall be taxed by uniform rule according to value', and the provisions of Section 1 of the Fourteenth Amendment to the Constitution of the United States." (26 Ohio St. 2d 161.)

The fourth and final *Park Investment* decision, *State, ex rel. Park Invest. Co., v. Bd. of Tax Appeals* (1972), 32 Ohio St. 2d 28, decided November 15, considered the impact of the legislation referred to therein as Amended Substitute Senate Bill No. 455 (effective June 28, 1972, as

amended R. C. 5715.01), on the duty of the Board of Tax Appeals under the previous *Park Investment* decisions to "take such steps as are necessary to effect an orderly correction of any inequalities in the percentage of true value at which all real property and all classes thereof are assessed for taxation." The Board, in response to this mandate, had again promulgated rules requiring, *inter alia*, that each parcel of real estate in Ohio be placed on the 1972 tax duplicate at a uniform assessment of 35 per cent of its current market value, a clear (if belated) recognition of the thrust of the Supreme Court decisions toward statewide uniformity. In recognition, however, of the conflicting requirements of the subsequently enacted R. C. 5715.01, which provided a staggered delay in the equalization of taxable values for the years 1972-1977 by means of each county's sexennial reappraisal, the Board, bound by the legislature which created it, approved a Scioto County abstract in conflict with its new rules and previous decisions of the Supreme Court, but conforming to the new statute. The Supreme Court concluded that the Board by obeying the command of the legislature was not required to show cause why it should not be adjudged in contempt.

Passing then to a review of its *Park Investment* decisions, particularly paragraph 2 of the syllabus of the 1971 case (26 Ohio St. 2d 161) and its mandate to correct inequalities in the percentage of true value at which all property is assessed, the court concluded that the legislative scheme which arrived at this goal by 1977, while in apparent conflict with the court's previous decisions insofar as it countenanced a delay in required uniformity, would not be held invalid. The court stated, at page 32:

"Amended Substitute Senate Bill No. 455, insofar as it establishes a uniform system of actual on-site appraisals for every parcel of real property in the state of Ohio, is the fairest and most equitable procedure for complying with R. C. 5715.011 and this court's mandate in the 1971 *Park Investment Co.* decision.

"Although this procedure will require until 1977 to complete, this delay is necessitated by the hardship to the

counties (primarily, expense to the smaller counties) in conducting such an appraisal. Incorporating the correction of inequalities, required by the General Assembly and this court, into the existing staggered sexennial reappraisal provides a more orderly and less expensive alternative to an independent statewide appraisal to be completed during the period of a single year."

If this fourth *Park Investment* decision may be said to represent a reasonable yielding to pragmatic necessity, as defined by the legislature, for the years beginning with the effective date of the statute in 1972, it also clearly says to us that for the years *preceding* 1972, in question here, the 1971 *Park Investment Co.* decision stands fast, requiring precisely that which the Board of Tax Appeals' abortive rules of December 17, 1971 (Rules BTA-5-01, BTA-5-06 and BTA-5-11) sought to achieve, viz., a statewide common level of assessment. *Cook Coffee Co.* v. *Bd. of Revision* (1971), 31 Ohio Misc. 119.

It remains only to note that the one authority from this state which has been brought to our attention as being in apparent direct conflict with the foregoing, is *Phelps Realty Co.* v. *Bd. of Revision,* noted above in connection with the third *Park Investment* decision. There, however, unlike the instant case, the taxpayer had elected to appeal from the Board of Revision to the Board of Tax Appeals. The latter agency, governed by the provisions of R. C. 5715.19, which required it to "* * * determine the common level of assessment of real property *in the county* for the year stated in the request, which common level of assessment shall be expressed as a percentage of true value" could, therefore, rise to no higher duty than its enabling legislation permitted it. As the Supreme Court noted in *Phelps, supra* at 84:

"That language [i. e., R. C. 5715.19] only contemplates giving relief against a claimed 'discriminatory valuation' where such valuation varies from the common level of assessment of real property in the county for the year stated in the request.

"There is no statute which provides for such relief

where a valuation varies from the common level of assessment of real property in the state. *This is not to say that the Board of Tax Appeals is not under a mandatory duty to provide by rule for a common level of assessment in all counties throughout the state.* See *State, ex rel. Park Invest. Co., v. Bd. of Tax Appeals,* 16 Ohio St. 2d 85, decided today." (Emphasis added.)

Here, of course, unlike the *Phelps* case, an appeal was prosecuted to a Court of Common Pleas unencumbered by the limitations of R. C. 5715.19, and charged with its duties under Section 2, Article XII of the Ohio Constitution, the Fourteenth Amendment of the U. S. Constitution, and the decisions of the Supreme Court heretofore noted.

To conclude, while none of the decisions noted above, excepting the *Cook Coffee* case, a well reasoned 1971 opinion from the Hamilton County Court of Common Pleas, is directed toward a situation involving a purely intercounty inequality of assessment (although several present and argue this factor combined with *intracounty* inequalities), the language of the Supreme Court, which we have deliberately set forth at some length herein, seems to us unmistakably transferable to the instant question. Clearly, it was so interpreted by the Board of Tax Appeals in its several abortive attempts, set out in our discussion of the third and fourth *Park Investment* cases, to frame rules to accomplish statewide (i. e., intercounty) uniformity. Clearly, this is also the goal of amended R. C. 5715.01, albeit postponed to 1977. Moreover, and beyond whatever the decisions of the Supreme Court may or may not require us to do under the facts of this case, we can find no reason in law or in logic to permit this court to draw the constitutional line commanding the equal protection of laws at the county boundary. *Winslow-Spacarb, Inc., v. Evatt* (1945), 144 Ohio St. 471, 476. If such a distinction is to be made, as defendant proposes, its justification would seem to lie in pragmatic or expedient considerations, the force of which may be admitted but the remedy for which (vide, discussion of Amended Senate Bill No. 455, *supra*) does not lie within the powers of this Court to initiate or approve. The use

by the trial court in the instant case, for the years preceding 1972, of the statewide common level of assessment against the true or actual value of plaintiff's property, seems to us to conform to the requirements of Section 2 of Article XII of the Ohio Constitution and Section 1 of the Fourteenth Amendment of the United States Constitution, and to accord properly with the directions of the Supreme Court of Ohio. We find no error in the judgment of the court below and accordingly overrule defendant's assignment of error.

The judgment of the Court of Common Pleas of Hamilton County, Ohio, is affirmed.

*Judgment affirmed.*

HESS, P. J., and SHANNON, J., concur.